**LAKE SHORE NATIONAL BANK,** as
Trustee under Trust No. 2158,
Plaintiff,

v.

**KNOTT HOTELS CORPORATION,** a Delaware Corporation, Defendant,
Third-Party-Plaintiff,

v.

**Jerrold WEXLER,** Third-Party-Defendant.

No. 74 C 2771.

United States District Court,
N. D. Illinois, E. D.

Dec. 15, 1975.

Charles D. Stein, Jack B. Schmetterer, Gottlieb & Schwartz, Chicago, Ill., for plaintiff.

Calvin Sawyier, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

The plaintiff, Lake Shore National Bank, brought this diversity action as Trustee under Trust No. 2158 to recover certain sums allegedly due from the defendant Knott Hotels Corporation, under the terms of a Guaranty Agreement dated October 21, 1971, and amended December 8, 1972. Knott answered and counterclaimed against the plaintiff for breach of a related agreement. In addition, Knott filed a third party complaint against Jerrold Wexler, the beneficiary of Trust No. 2158. Wexler moved to dismiss the third party complaint and for summary judgment under Rules 12 and 56 Fed.R.Civ.P., and for attorneys' fees pursuant to Rules 11 and 54 Fed.R. Civ.P. These motions are now ready for decision.

### I. *Factual Background*

The events leading to this action are complicated and involve many parties. In 1971, Lake Shore entered into an Agreement Preceding Lease and a Lease with The Westbury Chicago, Inc. Lake Shore's beneficiary, Wexler, was a party to the Agreement Preceding Lease, but not to the Lease itself. Westbury is a wholly owned subsidiary of the defendant Knott. According to the terms of these agreements, Lake Shore and Wexler were to build a hotel and lease it to Westbury. To induce Lake Shore to sign these contracts, Knott guaranteed the performance of certain of Westbury's obligations to Lake Shore. Specifically, Knott guaranteed the payment of $450,000 for construction costs and the payment of $1,007,500 if the parties terminated the lease pursuant to the provisions of its Article IX. The hotel was built and Westbury took possession. Later, Westbury defaulted in rent and tax payments, and the parties agreed to terminate the lease. When Knott failed to make the full payments as specified in the Guaranty Agreement, Lake Shore brought this suit seeking damages in the amount of the guaranteed payments, the defaulted rent and taxes, plus attorneys' fees, for a total of $1,597,785.16. Knott counterclaimed for the value of the hotel furniture and fixtures, and impleaded Wexler, the trust beneficiary, claiming that he had breached a warranty that the hotel would be a "first class hotel." Knott derived the warranty from two sources, the Agreement Preceding Lease, and an oral statement which Wexler allegedly made in 1973 when the parties were attempting to iron out some problems in the newly constructed building.

### II. *Motion to Dismiss the Third Party Complaint*

Wexler argues that the third party complaint fails to state a claim upon which relief may be based. The federal courts adhere to a policy of notice pleading, Fed.R.Civ.P. 8(a)(2). Accordingly, if the pleadings indicate in general the type of litigation that is involved, and afford the opposing party fair notice, they are legally sufficient. 2A J. Moore, *Federal Practice* ¶ 8.13, at 1692–99 (2d ed. 1975). The well-pleaded allegations of the complaint are taken as true. *Id.* ¶ 12.08, at 2267. Applying this test, the third party plaintiff's allegations that Wexler breached certain warranties are clearly sufficient. The third party defendant's motion to dismiss the third party complaint is denied.

### III. *Motion for Summary Judgment*

Wexler has also moved for summary judgment on the third party complaint, and offers three arguments to support his motion. In his affidavit, he denies making the alleged oral representation or warranty. Furthermore, although he concedes making certain limited and specific warranties in the Agreement Preceding Lease, he contends that he did not thereby warrant the construction of

a "first class hotel." Finally, he argues that laches bars the claims against him for breach of the warranties. If he had known of these claims, Wexler attests, he would not have permitted Lake Shore to sign the agreement terminating the lease. Pursuant to this agreement, Lake Shore accepted liquidated damages in lieu of pressing its claims for Westbury's defaults in rent, taxes and insurance, and its right to 30 years of future rental payments. *See* Affidavit of Jerrold Wexler. Each of these grounds will be considered in turn.

■ Knott alleges that on August 30, 1973, Wexler assured Westbury that the hotel would be substantially completed by September 7, 1973. To support this allegation, Knott submitted the affidavit of Earle Bowman. Knott also deposed Wexler who said he does not recall making a statement to that effect. *See* Exh. "Dep.", submitted with Knott's answer to Wexler's motion, pp. 86, 88. Moreover, Wexler seems to argue that if he did make the statement, it only meant that the hotel would be in operation by September 7, 1973, and Wexler insists that it was. *See* Reply of third party defendant, p. 5. In short, the parties dispute both the making of the statement, and its effect. A motion for summary judgment is an inappropriate method for resolution of disputed factual issues which, like those here, involve credibility and intent. 6 J. Moore, *supra*, ¶¶ 56.11 [3], at 2170; 56.17[41.–2], at 2581.

■ Similarly, the question of the written warranty is not susceptible to resolution upon a motion for summary judgment. Wexler concedes that he agreed to construct a 40 story building in compliance with the Contract Documents, as amended by the Final Plans and Specifications. Agreement Preceding Lease, § 2.2(b). The final plans and specifications were to set out "the Westbury Requirements." *Id.*, § 4.2. Knott argues that the Westbury requirements are explicitly defined in the contract as the equivalent of a "modern, first-class hotel." § 4.1. Hence, Knott contends that the contract obligates Wexler to construct a first class hotel. Wexler finds this conclusion patently untenable and argues that the phrase "first-class hotel" is merely a general description of Westbury's objectives. These opposing interpretations of the contractual language and its effect show the existence of a material factual issue. Neither party's position is so obviously correct that we can at this time confidently interpret these provisions as a matter of law. Moreover, the final plans and specifications were not included in the submitted materials. Until we know their content, we cannot attempt to interpret Wexler's contractual obligations with any degree of finality.

Finally, Wexler argues that Knott is estopped from pressing its claims for the alleged hotel defects because it remained silent until after the lease was terminated, to Wexler's prejudice. Knott, however, submitted numerous exhibits showing that its frequently repeated complaints were communicated to Wexler. In view of these exhibits, Wexler cannot seriously argue that Knott's complaints surprised him and that they are barred by laches.

In conclusion, Wexler has not shown that he is entitled to judgment as a matter of law. The papers reveal the presence of substantial factual questions. Hence, Wexler's motion for summary judgment on the issue of the alleged oral and written warranties is denied.

IV. *Motion for Attorneys' Fees*

■ The third party defendant's motion for attorneys' fees is frivolous and is denied.